IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JACOB NOLAN JESSUP,

        Defendant.

Case No. 22-CR-276-JFH

**OPINION AND ORDER**

Before the Court is a motion to suppress ("Motion") filed by Defendant Jacob Nolan Jessup ("Defendant"). Dkt. No. 32. The United States of America ("Government") opposes the Motion. Dkt. No. 34. The Court conducted a hearing on the Motion on November 23, 2022. For the reasons stated herein, the Motion is DENIED.

**BACKGROUND**

Defendant is charged with two counts of felon in possession of a firearm and ammunition based on two separate occasions. Dkt. No. 25. The first count relates to Defendant's alleged possession on or about March 25, 2022 of a Canik Model TP9SF Elite, 9mm caliber semi-automatic pistol and sixteen (16) rounds of 9mm ammunition. *Id.* at 1-2. The second count relates to Defendant's alleged possession on or about August 7, 2022 of a Sturm, Ruger & Company Inc. .380 Auto caliber pistol and six (6) rounds of .380 Auto ammunition. *Id.* at 3-4. Defendant's Motion challenges the circumstances relating to the March 25, 2022 count.

The Government called Tulsa Police Officer Damien Banks ("Officer Banks") to testify at the hearing on the Motion. Officer Banks reported that he responded to a 911 call around 5:00 a.m. on March 25, 2022. The Government introduced a recording of the call into evidence at the hearing as well. On the recording, a male individual reported a "suspicious vehicle" in the parking

lot of his workplace at 3414 East Pine Street, Tulsa.  The caller told the dispatcher "I don't know who it is; I don't know why they're here" and says later "it should not be here."  He described the vehicle as a black Chevrolet Tahoe and, upon the dispatcher's request, provided the license plate of the vehicle.  The caller also left his name with the 911 dispatcher.

Officer Banks testified that the address in the 911 call is in an area that Tulsa Police consider to be high-crime, with events such as burglaries, shootings, copper thefts, and catalytic converter thefts occurring in the area.  He then described his response to the 911 call.  He located the same dark vehicle and looked inside it to try to see if it was occupied but was unable to see because of the vehicle's darkly tinted windows.  He made contact with the 911 caller briefly to verify that the vehicle was the same that the caller described.  Officer Banks then approached the vehicle again to examine if it was occupied.  Because of the dark window tint, he had to push his flashlight against the window and put his face against the window to see in to the vehicle.  He then saw Defendant asleep in the vehicle with the seat reclined back.  Officer Banks testified he was not sure whether the person in the vehicle was having a medical emergency, but that regardless, the person was trespassing on the business' property.

Upon seeing an individual in the vehicle, Officer Banks banged on the window several times and the individual, later identified as Defendant, woke up.  Officer Banks identified himself but did not order Defendant to open the door.  The only lights activated on Officer Banks' vehicle were headlights and bright white "scene lights."  He did not have blue and red colored lights turned on.  Defendant opened the door, then shut it quickly, and then opened it again.  Officer Banks testified that he found this behavior odd and asked Defendant to step out of the car for Officer Banks' safety.  He did not order Defendant out of the car, did not use physical contact, and did not display a weapon.  Defendant complied and walked to the back of the vehicle with the officer.

Officer Banks testified that if Defendant had refused the exit the vehicle, he would have then told Defendant he was under investigative detention for trespassing.

After Defendant and Officer Banks walked to the back of the vehicle, Officer Banks asked Defendant for his identification. Defendant did not have a driver license but provided an Oklahoma identification card. Backing officers arrived around this time and Officer Banks performed a warrants search, which identified that Defendant had three (3) outstanding warrants.

The Government provided additional facts in its response to the Motion. While Officer Banks ran a search on Defendant's identification, backing officers noticed that Defendant appeared to have a gun holster on his hip. They performed a pat-down search and confirmed that the item was indeed a gun holster. They then asked Defendant if he had a firearm. Defendant at first did not respond, then told officers he "didn't think" he had a gun. Based on their identification of the holster, officers searched the Tahoe and found a loaded Canik Model TP9SF Elite, 9mm caliber semi-automatic pistol along with a full magazine of ammunition. Defendant's possession of this firearm and ammunition forms the basis for count one of the indictment.

## AUTHORITY AND ANALYSIS

Defendant argues that he was subject to an impermissible seizure when Officer Banks approached Defendant, instructed him to step out of his vehicle, and then took his Oklahoma identification card from him. Dkt. No. 32 at 3-5. In Defendant's characterization, Officer Banks lacked a reasonable suspicion of criminal activity. Dkt. No. 32 at 3-4.

Initially, the Court examines whether a seizure or investigative detention occurred. Supreme Court "cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quotation omitted). "Only

when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* The Court is not convinced that a seizure occurred when Officer Banks approached Defendant and began asking questions. However, Defendant is correct that a seizure occurs when an officer takes identification and conducts a records check on it. *United States v. Jones*, 701 F.3d 1300, 1315 (10th Cir. 2012); *United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir. 1995). Thus, the Court concludes that Defendant was detained during the encounter.

"The Fourth Amendment permits police to effect a brief stop in order to investigate the possibility of criminal involvement if they have a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Conner*, 699 F.3d 1225, 1230 (10th Cir. 2012) (quotation omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). Instead, "[r]easonable suspicion may exist even where a 911 call fails to allege criminal activity and the responding officers do not observe any illegal conduct." *Conner*, 699 F.3d at 1231. The Court "must evaluate the totality of the circumstances to determine whether reasonable suspicion existed." *Id.* "An investigatory detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime." *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (quotations and citations omitted). "Although reasonable suspicion requires the officer to act on something more than an inchoate and unparticularized suspicion or hunch, the level of suspicion required for reasonable suspicion is considerably less than proof by a preponderance of the evidence or that required for probable cause." *Id.* at 1255-56 (quotations and citations omitted).

Here, articulable facts and rational inferences support a finding of reasonable suspicion. Defendant was parked in the parking lot of a business at approximately 5:00 a.m., outside of normal working hours. *See Conner*, 699 F.3d at 1231 ("Another factor in determining the existence of reasonable suspicion is the time of night."). The 911 caller worked at the business, had daily familiarity with what vehicles did and did not generally park in the parking lot, and told the dispatcher that Defendant's vehicle "should not be here." Officer Banks testified that the location involved was in a high-crime area. He also testified that Defendant's behavior was "odd" and that he was concerned for his safety when Defendant opened the car door, closed it abruptly, and then re-opened it. These are rational and articulable grounds for a reasonable suspicion that criminal activity was afoot.

Additionally, although the caller was not anonymous, the Government encourages the Court to borrow from Tenth Circuit factors for evaluating whether "an anonymous tip, suitably corroborated, exhibit[ed] sufficient indicia of reliability to provide reasonable suspicion." *United States v. Chavez*, 660 F.3d 1215, 1222 (10th Cir. 2011) (quotation omitted). These factors include: (1) "whether the police knew some details about the informant;" (2) "whether the informant reported contemporaneous, firsthand knowledge;" (3) "whether the informant provided detailed information about the events observed;" (4) "the informant's stated motivation for reporting the information;" and (5) "whether the police were able to corroborate information provided by the informant." *Id.* The Court agrees with the Government that all these factors weigh in favor of corroborating the 911 call and providing reasonable suspicion.[1] The police knew the 911 caller was associated with the business whose parking lot was involved; the caller reported contemporaneous, firsthand knowledge; he provided detailed information about what he observed

---

[1] During the hearing, Defendant conceded that the 911 call met all five (5) factors.

and cooperated with the dispatcher in providing additional information when asked; he stated that he was alone and felt that the situation was suspicious; and police corroborated the information he provided.

Considering the totality of the circumstances, the Court concludes that reasonable suspicion existed for Officer Banks to investigate and detain Defendant. No constitutional violation occurred.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's motion to suppress [Dkt. No. 32] is DENIED.

DATED this 28th day of November 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE